UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN P. WILLIAMS,

        Plaintiff,

                                      Civil Action No. 12-CV-12476

vs.                                        HON. MARK A. GOLDSMITH

JPMORGAN CHASE BANK, N.A.,

        Defendant.
_____/

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION TO REMAND (DKT. 6)

### I. Introduction

This is a mortgage foreclosure case. The complaint, which was originally filed in Oakland County Circuit Court by Plaintiff John P. Williams, alleges defective foreclosure and breach of contract, and seeks injunctive relief setting aside the foreclosure sale and staying all proceedings regarding the alienation of title of the foreclosed property. On June 7, 2012, Defendant JPMorgan Chase Bank, N.A., removed the case, alleging diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff filed a motion to remand, arguing that the amount-in-controversy requirement for federal diversity jurisdiction is not met because the value of the foreclosed property is under $75,000. Pl. Mot. at 4 (Dkt. 6). Defendant filed a response, contending that the amount in controversy exceeds $75,000. Def. Resp. at 3 (Dkt. 9). No reply brief was filed.

The Court concludes that the amount in controversy here is the fair market value of the foreclosed property, and the fair market value is most accurately measured by a market analysis of the property. Defendant presents two market analysis reports showing that the fair market

value of the property exceeds $75,000.  Therefore, Defendant has met its burden of demonstrating that it is more likely than not that the amount in controversy exceeds $75,000, and the Court will deny Plaintiff's motion to remand.

## II.     Background

The real property at issue in this case is located at 302 North Washington, Royal Oak, MI 48067. Warranty Deed, Ex. 1 to Def. Resp. (Dkt. 9-2). On August 7, 2001, Plaintiff purchased this property for $165,000. Id. Plaintiff also obtained a mortgage for the property from Option One Mortgage Corporation, in the amount of $90,000. Mortgage at 2 of 12 (CM/ECF pagination), Ex. 2 to Def. Resp. (Dkt. 9-3). Foreclosure proceedings were commenced on the property, and on November 1, 2011, the property was sold to Defendant at a sheriff's sale for $73,051. Sheriff's Deed on Mortgage at 2 of 7 (CM/ECF pagination), Ex. 3 to Def. Resp. (Dkt. 9-4). On the date of the Sheriff's Sale, the amount due on the mortgage was $97,006.94. Id. at 4 of 7 (CM/ECF pagination).

On October 18, 2011, Defendant obtained a Residential Broker Price Opinion appraising the property's value. Residential Broker Price Opinion, Ex. 4 to Def. Resp. (Dkt. 9-5). In a section labeled "Market Value," the opinion concluded that the property had an "as is 90 to 120 day value" of $110,000; a "repaired 90 to 120 day value" of $115,000, a quick sale value of $100,000, and a land value of $85,000. Id. at 3 of 4 (CM/ECF pagination). The opinion also provided the adjusted sale prices of three "comparable" residences in Royal Oak: (i) 220 Maple, sold for $84,000; (ii) 705 Saint Charles Court, sold for $147,900; and (iii) 516 South Laurel Street, sold for $167,000. Id. An Oakland County/Royal Oak Residential Property Profile lists the "current assessed value" of the property as $59,100. Residential Property Profile at 3 of 3 (CM/ECF pagination), Ex. 5 to Def. Resp. (Dkt. 9-6). In Royal Oak, the City Assessor estimates

assessed value as approximately half of the market value,[1] so the approximate market value corresponding to this assessed value would be $118,200.

### III.     Legal Standard

In order to invoke federal court diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs.  28 U.S.C. § 1332(a).  The amount in controversy is measured by determining "the value of the object of the litigation."  Northrup Props., Inc. v. Chesapeake Appalachia, LLC, 567 F.3d 767, 770 (6th Cir. 2009) (citation and quotation marks omitted).

The removing party has the burden of demonstrating, by a preponderance of the evidence, that the amount-in-controversy requirement is met.  See Gafford v. Gen. Elec. Co., 997 F.2d 150, 160 (6th Cir. 1993) (abrogated on other grounds by Hertz Corp. v. Friend, 130 S. Ct. 1181 (2010)).  Specifically, where plaintiffs "seek to recover some unspecified amount that is not self-evidently greater or less than the federal amount-in-controversy requirement, the defendant satisfies its burden when it proves that the amount in controversy more likely than not exceeds $75,000."  Everett v. Verizon Wireless, Inc., 460 F.3d 818, 822 (6th Cir. 2006) (citations and quotation marks omitted).

### IV.     Analysis

Where a plaintiff seeks injunctive or declaratory relief, "it is well-settled that the amount in controversy is to be measured for subject matter jurisdiction purposes by the value of the right that the plaintiff seeks to enforce or to protect against the defendant's conduct or the value of the object that is the subject matter of the action." 14AA Charles Allen Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3708 (4th ed. 2009).  Because Plaintiff is

---

[1] See Assessment Report, available at
http://www.ci.royal-oak.mi.us/portal/departments/assessing/assessment-report.

seeking to set aside the foreclosure sale and retain title and rights to the property, the amount in controversy is the value to Plaintiff of nullifying the foreclosure sale and regaining possession of the property. The issue before the Court is how that value should be measured.

In Plaintiff's motion, he argues that "[i]t is uncontested that both the foreclosure sale price and the appraised value of the property at the time of sale are both is less that [sic] $75,000." Id. at 4. Plaintiff then argues that Defendant has failed to meet its burden of showing that the amount in controversy exceeds $75,000. Id. at 6.

Defendant argues in response that the market value of the foreclosed property is the best measurement of the amount in controversy in mortgage foreclosure cases. Def. Resp. at 3 (Dkt. 9). Defendant further contends that the only evidence Plaintiff presented regarding the value of the property was the foreclosure sale price. Id. at 4. Defendant argues that it presented market analysis evidence indicating that the property's fair market value exceeds $75,000, and the foreclosure sale price is insufficient to overcome this market analysis evidence. Id. Defendant contends it has met its burden of showing that "it is more likely than not that the amount in controversy exceeds $75,000." Id.

The Court is not aware of binding precedent in this jurisdiction governing how to determine the value of setting aside a foreclosure. In a prior opinion discussing this issue, Bobel v. MetLife Home Loans, Inc., No. 11-CV-10574, 2011 WL 1831741 (E.D. Mich. May 13, 2011), this Court noted that district courts have used two major indices to determine the value of enjoining foreclosures: the fair market value of the property and the amount owed on the mortgage loan. Bobel, 2011 WL 1831741, at **2-3 (collecting cases). Some courts have adopted only one of these approaches. See, e.g., McGhee v. Citimortgage, Inc., 834 F. Supp. 2d 708, 711 (E.D. Mich. 2011) (applying the fair market value approach); Brown v. Citimortgage,

Inc., No.10-0709-KD-M, 2011 WL 1059206, at *3 (S.D. Ala. Mar. 4, 2011) (same); Henderson v. Nationstar Mortg. Co., LLC, No. C07-2039JLR, 2008 WL 302374, at *1 (W.D. Wash. Jan. 31, 2008) (applying the mortgage debt approach). However, "many courts . . . have found that the fair market value of the property and the amount of indebtedness both exceeded $75,000, and therefore have declined to decide conclusively which method to use." McGhee, 834 F. Supp. at 711 (emphasis in original). See, e.g., Bobel, 2011 WL 1831741, at *3 (concluding that the fair market value of the property and the amount of indebtedness both exceeded the jurisdictional requirement, and therefore declining to decide between the two); Garfinkle v. Wells Fargo Bank, 483 F.2d 1074, 1076 (9th Cir. 1973) (same).

Both parties in the instant case premise their arguments on an application of the fair market value approach: Plaintiff argues that the sheriff's sale price controls; and Defendant argues that the market analysis of the property's value is decisive. Neither party argues that the mortgage debt approach should be applied here. Therefore, the Court will adopt the fair market value approach to determining the amount in controversy here. The Court also notes that it finds persuasive the McGhee court's reasoning explaining why the fair market value approach is the better method for determining amount in controversy:

> [The fair market value] approach best conforms to the requirement that the Court consider the amount in controversy "from the perspective of the plaintiff, with a focus on the economic value of the rights he seeks to protect." Smith v. Nationwide Prop. & Cas. Ins. Co., 505 F.3d 401, 407 (6th Cir.2007). The plaintiff here is attempting to quiet title to a property; the value to him of that relief would be the market value of the property he wishes to possess. Because the property is the object of the litigation, the market value of the foreclosed property is the best measure of the amount in controversy in this case.

McGhee, 834 F. Supp. 2d at 711-712.

The Court now turns to the issue of how best to measure the fair market value of the property. Several courts analyzing this issue have determined that the sheriff's sale price

5

demonstrated the fair market value of the property. See Meriedeth v. Mae, No. 11-CV-11866, 2011 WL 2456630, at *2 (E.D. Mich., June 13, 2011); Kehoe v. Aurora Loan Servs. LLC, No. 10-cv-00256-RCJ-RAM, 2010 WL 4286331, at *4 (D. Nev. Oct. 20, 2010). Additionally, in Bobel, this Court determined that the fair market value of the property was established by the sheriff's sale price. Bobel, 2011 WL 1831741, at *3 n.4. However, in that case, the parties did not contest using the sheriff's sale price as the fair market value; rather, the disputed issue was whether there was any amount in controversy, given that the plaintiff was seeking equitable relief. Id. at **1-2. Therefore, the Court's application of the sheriff's sale price in Bobel does not represent a conclusion that the fair market value of a foreclosed property is always best represented by the sheriff's sale price.

Furthermore, some courts considering how to determine amount in controversy in foreclosure cases have adopted a market analysis approach as the best measurement of the fair market value of the property. In Ross v. Chase, No. 11-11711 (E.D. Mich. May 30, 2012), the court stated:

> [T]he Court does not believe that the price paid for the subject property at the sheriff's sale is a reasonable reflection of its fair-market value. As noted above, the amount paid at the sheriff's sale (to wit, $112,813.33) is approximately the amount owed on the loan. To counter the Defendants' proffer, the Plaintiff has presented evidence that the fair-market value of her property is only $32,500, relying upon a comparative market analysis. There are courts within this District that have relied upon the comparative market analysis approach as a method to estimate the fair-market value of a selected parcel of property. The analysis of the sales of comparable residential properties in the past year and in the immediate neighborhood of the property provides a competent range for the fair-market value of the property.

Ross, No. 11-11711 at 4 of 6 (CM/ECF pagination) (citations omitted). See also McGhee, 834 F. Supp. 2d at 712-713 (finding that it was not more likely than not that the amount in controversy exceeded $75,000, where the foreclosure sale price was $86,774.37, but comparable

market analysis indicated the fair market value was about $11,000); Golden v. Wells Fargo Bank, N.A., No. 11-15558, 2012 WL 1130547, at *2 (E.D. Mich. Apr. 4, 2012) ("This Court declines to use a sheriff's sale, in which the property was purchased by the very entity that owned the mortgage, as a proxy for fair-market value.").

Considering the above reasoning, the Court concludes that market analysis is a more reliable indicator of actual fair market value than is the price for which the property was sold at the sheriff's sale. At a sheriff's sale, the price may be influenced by the amount due on the loan, see Ross, No. 11-11711, at 4 of 6; and there may also be only one bidder at the sheriff's sale. See McGhee, 834 F. Supp. 2d at 712-713. Both of these factors may cause a sheriff's sale price to deviate from the actual market value of the property. A comparative market analysis that assesses the actual market demand for comparable, neighboring residential properties is more likely to accurately reflect the fair market value of the property in question.

Here, the sheriff's sale price was $73,051; the market appraisal indicated a property value of approximately $110,000; and the comparative market analysis showed sale prices of similar properties for $84,000, $147,900, and $167,000. Therefore, the market analysis evidence demonstrates that the fair market value of the property exceeds $75,000. For this reason, the Court concludes that Defendant met its burden of showing that it is more likely than not that the amount in controversy, the value of the property, exceeds $75,000.

### V. Conclusion

For the reasons stated above, the Court denies Plaintiff's motion to remand.

SO ORDERED.

Dated: December 11, 2012                    s/Mark A. Goldsmith
     Flint, Michigan                             MARK A. GOLDSMITH
                                                                   United States District Judge

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 11, 2012.

s/Deborah J. Goltz
DEBORAH J. GOLTZ
Case Manager
